IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| PAMELA SIMMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 114-212 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Pamela Simms appeals the decision of the Acting Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

**I.     BACKGROUND**

Plaintiff applied for DIB on July 26, 2011, alleging a disability onset date of July 25, 2011. Tr. ("R."), pp. 145. Plaintiff was forty-nine years old at her alleged disability onset date and was fifty-one years old at the time the Administrative Law Judge ("ALJ") issued the decision currently under consideration by the Court. R. 30. Plaintiff obtained a bachelor's

degree from Mercer University and then a two-year nursing degree. R. 42. Prior to her alleged onset date, Plaintiff had a twenty-year work history as a registered nurse, head nurse, and nurse supervisor. R. 28, 42-43, 68. Plaintiff applied for disability based on allegations of fibromyalgia, affective and mood disorders, arthritis, Graves' disease, depression, thyroid problems, chronic pain in all joints, asthma, migraine headaches, and lupus. R. 76-77, 194. At the administrative hearing, Plaintiff also stated she had been diagnosed with multiple sclerosis. R. 56-57.

The Social Security Administration denied Plaintiff's application initially and on reconsideration. R. 78-80, 82-84. Plaintiff then requested a hearing before an ALJ, R. 86, 92, and the ALJ held a hearing on April 2, 2013. R. 36-75. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and William Starke, a Vocational Expert. Id. On June 21, 2013, the ALJ issued an unfavorable decision. R. 13-35.

Applying the sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since July 25, 2011, the alleged onset date. (20 C.F.R. § 404.1571 *et seq*.).

2. The claimant has the following severe impairments: fibromyalgia, sacroiliitis, inflammatory arthritis, asthma, hypertension, migraine headaches, and a cyclothymic disorder. (20 C.F.R. § 404.1520(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).

4. The claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except she requires a cane to

            assist in ambulation.[1]  The claimant can frequently climb ramps and stairs and occasionally balance, stoop, kneel, crouch and crawl, but never climb ladders, ropes, or scaffolds.  She must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  The claimant can have no more than occasional contact with the general public and no more than occasional "team-type" interactions with coworkers.  She is limited to simple, routine unskilled work tasks. Thus, the claimant is unable to perform any past relevant work. (20 C.F.R. § 404.1565).

5.       Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, (20 C.F.R. §§ 404.1569 and 404.1569(a)), including photocopy machine operator, marking clerk, and small parts assembler.  Therefore, the claimant has not been under a disability, as defined in the Social Security Act, from July 25, 2011, the alleged onset date, through June 21, 2013 (the date of the ALJ's decision).  (20 C.F.R. § 404.1520(g)).

R. 18-30.

When the Appeals Council ("AC") denied Plaintiff's request for review, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the ALJ erred (1) in evaluating Plaintiff's psychological limitations under Listings

---

[1]"Light work" is defined as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

3

12.04 and 12.06, and in particular, by not ordering a consultative psychological examination; (2) in evaluating Plaintiff's credibility with respect to limitations caused by her fibromyalgia; and (3) in determining Plaintiff retained an RFC for light work that is internally inconsistent and not supported by substantial evidence. See doc. no. 11 ("Pl.'s Br."). The Commissioner maintains that Plaintiff's psychological limitations were appropriately addressed by the ALJ based on a sufficiently developed record and that the ALJ's determination that Plaintiff has an RFC for light work was supported by substantial evidence. See doc. no. 12 ("Comm'r's Br.").

## II. DISCUSSION

### A. Standard of Review.

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a

reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### B. The ALJ's Basic Obligation to Develop Full and Fair Record.

A claimant has the burden of proving her disability and is responsible for providing evidence in support of her claim. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). Nevertheless, "because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." Larry v. Comm'r of Soc. Sec., 506 F. App'x 967, 969 (11th Cir. 2013) (citing Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)). In fulfilling her duty to conduct a full and fair inquiry, the ALJ is not required to obtain additional information by ordering a consultative examination unless the record establishes

that such an examination is necessary to enable an ALJ to render an informed decision. Ingram v. Comm'r of Soc. Sec. Admin, 496 F.3d 1253, 1269 (11th Cir. 2007); Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999); Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988). The regulations also provide that the ALJ may order a consultative examination when warranted. See 20 C.F.R. § 404.1517. "It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for [her] to make an informed decision." Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (citation omitted).

**C. The ALJ's Analysis of Plaintiff's Alleged Mental Impairments Is Not Supported by Substantial Evidence.**

Plaintiff argues that she is disabled under Listing 12.04 and 12.06 based on the opinion of her treating psychiatrist, Dr. James W. Branam, a specialist who is Board Certified in psychiatry. Pl.'s Br., pp. 5-8; R. 583. Dr. Branam offered to the AC, less than one month after the ALJ issued her opinion, his July 14, 2013 Medical Source Statement opining that Plaintiff met Listing 12.04 and 12.06, and it was offered in addition to Dr. Branam's treatment notes that were already in the record and available to the ALJ. R. 414-21 (Ex. 9F); 479-82 (Ex. 16F); R. 513-23 (Ex. 21F); R. 583-93 (Ex. 28F). Plaintiff's counsel also submitted to the AC a brief that argued the issue of disability under Listing 12.04 and 12.06 and the need for a consultative psychological examination. R. 5; Ex. 19E (R. 297-306).

The Commissioner argues that the evidence submitted to the AC does not indicate Plaintiff had disabling limitations on or before the ALJ's June 21, 2013 decision and points out that under Social Security Ruling ("SSR") 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance.

6

SSR 96-5p, 1996 WL 374183, at *1, 2 (July 2, 1996); see also 20 C.F.R. § 404.1527(d). The Commissioner further argues that Plaintiff has not shown a consultative examination was necessary for the ALJ to make an informed decision because she only speculates as to whether such an examination would reveal evidence to support Plaintiff's claim. Comm'r's Br., pp. 8-9. In conducting its analysis, the Court is mindful that evidence submitted to the AC is part of administrative record and must be considered in conjunction with the entirety of the record to determine whether substantial evidence supports the ALJ's decision. Ingram, 496 F.3d at 1266-67.

### 1. The Requirements of Listing 12.04 and Listing 12.06.

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that her condition meets or equals a Listing. Castle v. Colvin, 557 F. App'x 849, 852 (11th Cir. 2014); Wilkinson *ex rel.* Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987). In order to show that her impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citation omitted). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. § 404.1520(d).

7

Listing 12.04 addresses affective disorders, and provides that such a disorder is "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R. 404, Subpart P, Appendix 1, § 12.04. Listing 12.06 addresses anxiety related disorders and provides that a claimant is disabled if she suffers from anxiety that "is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders." Id. § 12.06.

Under both Listings, a claimant meets the required level of severity if she satisfies the criteria in paragraphs A and B or A and C of the particular Listing. Id. §§ 12.00A, 12.04, 12.06. Paragraph A of each listing identifies symptoms commonly associated with such disorders, and requires the claimant to provide medically documented findings of one or more of the listed symptoms. Id. §§ 12.00A, 12.04 & 12.06. To satisfy 12.04A, a claimant must provide medical documentation of depressive syndrome, manic syndrome, or bipolar syndrome. Id. § 12.04A. To satisfy 12.06A, the claimant must provide medical documentation of generalized persistent anxiety accompanied by three of the following: motor tension, autonomic hyperactivity, apprehensive expectation, or vigilance and scanning; persistent irrational fear resulting in a compelling desire to avoid the source of the fear; recurrent severe panic attacks occurring on average once per week; recurrent obsessions or compulsions, or recurrent intrusive recollections of a traumatic experience. Id. § 12.06A.

Paragraph B criteria list impairment-related functional limitations that are incompatible with the ability to do any gainful activity. Id. To satisfy the criteria, a claimant

8

must show at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. Id. §§ 12.04B & 12.06B.

The term "marked" means more than moderate but less than extreme and covers a limitation that interferes "seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." Id. § 12.00C. "[E]xacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace" qualify as "episodes of decompensation." Id. § 12.00C(4). The criterion of "repeated" episodes of "extended duration" are met when a claimant has three episodes within one year, or has an average of one episode, lasting for at least two weeks, every four months. Id.

### 2. The ALJ Improperly Failed to Address Listing 12.04.

Although Plaintiff applied for DIB based on allegations of affective and mood disorders, (R. 76-77, 194), and although two different state agency consultants completed Psychiatric Review Technique Forms evaluating Plaintiff against the criteria of Listing 12.04, (Ex. 12F (R. 447-60) & Ex. 18F (R. 491-504)), the ALJ's opinion never mentions Listing 12.04. The ALJ does address Listing 12.06, (R. 19-20), and the Part B criteria for that Listing, which presumably would be the same for Listing 12.04 because, as set forth above, the Part B criteria are the same for both. Nonetheless, the absence of any discussion of Listing 12.04 is particularly puzzling because the ALJ referenced, albeit in cursory fashion, the opinions of the two state agency

9

consultants who provided evaluations under Listing 12.04, Christal Janssen, Ph.D., and James Piat, Ph.D. R. 27 (citing Exs. 12F, 20F (Dr. Janssen) & Exs. 18F, 19F (Dr. Piat)).

Social Security Ruling ("SSR") 96-6p provides that findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review. SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). Although ALJs are not bound by the findings of state agency doctors, "they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p. Numerous courts have recognized this duty to address the opinions of state agency doctors. Wade v. Colvin, No. 3:12-cv-853-J-MCR, 2013 WL 3153846, at *4 (M.D. Fla. June 19, 2013) (remanding to Commissioner, in part, because of failure to explain rejection of part of opinion offered by state agency consultant); Plourde v. Barnhart, No. 02-164-B-W, 2003 WL 22466176, at *4 (D. Me. Oct. 31, 2003) (relying on SSR 96-6p to conclude that "[w]ithout discussion or explanation, the administrative law judge implicitly rejected all of the foregoing mental limitations (by state agency doctors). He was not free to choose simply to ignore this uncontradicted evidence, or pick and choose from it *sub silentio,* to craft an RFC."), *adopted by* 2003 WL 22722078 (D. Me. Nov. 18, 2003).

The ALJ briefly noted the opinions of Dr. Janssen and Dr. Piat but then concluded without explanation that she gave "great weight" to the opinion of Dr. Janssen because it "is more consistent with the medical evidence, as well as the claimant's allegations." R. 27. Thus although the ALJ technically addressed the opinions of these state agency consultants, the Court is hard-pressed to conclude that the ALJ actually explained her reasoning for

accepting one opinion over another or how the opinion of Dr. Janssen matched other, unidentified medical evidence and unidentified allegations by Plaintiff.

Moreover, in chronicling Plaintiff's medical history, the ALJ acknowledged Plaintiff's lengthy treatment relationship with Dr. Branam, starting on January 4, 2011, at which time she was initially diagnosed with cyclothymic disorder. R. 22. The ALJ also acknowledged increases in Plaintiff's medication dosages, (R. 22), and that Plaintiff saw Dr. Branam regularly throughout 2011 and 2012. R. 23-25. However, as Plaintiff argues in her brief, Dr. Branam was never asked to give his opinion on any mental limitations for Plaintiff. Pl.'s Br., p. 6. Indeed, the ALJ took pains in her opinion to note an evidentiary gap in the record when she stated "that the claimant's primary care physicians and specialists have not offered medical source statements on her behalf." R. 27.

Less than one month after the ALJ issued her opinion, Plaintiff attempted to cure this deficiency by obtaining a Medical Source Statement from Dr. Branam to submit to the AC. R. 583-93 (Ex. 28F). Dr. Branam opined that Plaintiff satisfied Listings 12.04 and 12.06 (Parts A and B) and had been disabled since July 25, 2011. R. 583-84, 588-90. He additionally stated that she had extreme limitations in understanding and remembering detailed instructions and carrying out detailed instructions, as well as marked limitations in responding appropriately to work pressures in a usual work setting and responding appropriately to changes in a routine work setting. R. 585-86. He also stated the Plaintiff's mental impairments affected Plaintiff's ability to concentrate and focus, retain stored information, and engage in effective decision making. R. 586. That Medical Source Statement was submitted to the AC in conjunction with briefing specifically addressing Listing 12.04 and Listing 12.06, and specifically identifying a lack of development in the

11

record of Plaintiff's mental status by the ALJ. Ex. 19E (R. 297-307). The AC denied review without any substantive comment. R. 1-6.

The Commissioner argues that Dr. Branam's Medical Source Statement makes no difference to the ALJ's determination that Plaintiff was not disabled on or before June 21, 2013, the date of the ALJ's decision, because his opinion that Plaintiff met a listed impairment and was disabled is an issue reserved to the Commissioner. Comm'r's Br., p. 4. The Commissioner also argues that Dr. Branam failed to submit objective medical findings to support his opinion. Id. Although the Commissioner is correct that the ultimate decision on disability belongs to her, SSR 96-5p, 1996 WL 374183, at *1, 2, that does not prohibit a treating physician from offering an opinion as part of the administrative record, particularly when the ALJ specifically identified the fact that the record did not contain any medical source statements from a treating physician on Plaintiff's behalf. R. 27. Plaintiff attempted to cure that problem by obtaining just such a statement, and the Commissioner now tries to discount the statement out of hand as immaterial to the ALJ's decision.

Additionally, the fact that the Medical Source Statement itself does not have objective medical evidence attached is no basis for discounting the opinion out of hand. The administrative record as first presented to the ALJ, and thus before the AC at the time it received Dr. Branam's Medical Source Statement, contains treatment notes documenting Plaintiff's regular sessions with Dr. Branam and numerous medication changes made in an attempt to address Plaintiff's mental condition. Exs. 9, 16, 21. Dr. Branam's opinion in the Medical Source Statement was not offered in a vacuum.

The Commissioner also argues that Dr. Branam's opinion was inconsistent with the other evidence of record, and cites in support the state agency opinions of Dr. Janssen and Dr.

12

Piat. Comm'r's Br., pp. 4-5. The Commissioner points out Dr. Janssen opined "Plaintiff could perform simple, repetitive unskilled work with incidental interpersonal contact and direct, concrete supervision." Id. at 5 (citing R. 511.) Further, Dr. Piat "determined Plaintiff could understand, carry out and recall simple directions; has adequate social functioning; has an insubstantial limitation for needing help adjusting to change and making realistic plans; and can adequately sustain concentration, persistence, and pace to complete a normal work-week, but has some difficulty with complex tasks." Id. (citing R. 507). The Commissioner then concedes that these two state agency doctors did not examine Plaintiff or review all the evidence, but asserts "their opinions are supported by and consistent with the record," and therefore the ALJ properly gave their opinions "great deference." Id.

However, even if the Court were overlook that the Commissioner made the same sweeping generalization as the ALJ without specific reference to the supposedly supporting and consistent record evidence, the bigger problem is that the ALJ did not give great deference to the conclusions of both Dr. Janssen and Dr. Piat. In fact, the ALJ "gives great weight to the first opinion of DDS (Dr. Janssen), noting that this is more consistent with the medical evidence, as well as the claimant's allegations." R. 27. Thus, it appears as though the Commissioner is now attempting to rely on an expert's opinion that the ALJ did not.

However, the Court cannot now engage in an administrative review that was not done in the first instance at the administrative level, but rather must examine the administrative decision as delivered. Mills v. Astrue, 226 F. App'x 926, 931-32 (11th Cir. 2007) (acknowledging evidence in the record not mentioned by the ALJ may support administrative decision but concluding that court could not "say the error was harmless without re-weighing the evidence," which would require "conjecture that invades the province of the ALJ"); see

13

also Martin v. Heckler, 748 F.2d 1027, 1031 (5th Cir. 1984) (noting it to be "inappropriate on judicial review for the first time to apply administrative criteria not themselves considered by the [Commissioner]").

More importantly, however, is that the record, even as the Commissioner now tries to review it, is incomplete. The ALJ never addressed Listing 12.04. The AC denied review without substantive comment. The record as described above is replete with information referencing Listing 12.04, including the application for DIB, the opinions of two state agency doctors, and a post-hearing, but pre-AC review, Medical Source Statement from a treating physician, as well as specific briefing on the topic. The request for a consultative examination to fill any perceived gaps in the evidentiary record was not baseless. This is not a case where there is no objective evidence suggesting Plaintiff *may* suffer from some type of mental impairment. Cf. Parker v. Colvin, CV 213-137, 2014 WL 2855047, at *4 (S.D. Ga. June 23, 2014) (Wood, C.J.) (finding no error in failing to appoint psychiatrist or psychologist or order consultative examination when claimant offered no objective evidence suggesting mental or emotional impairment). Indeed, that there was a discrepancy in opinion between two state agency doctors, and an identified lack of opinion from a treating physician, weighs all the more in favor of finding there was an evidentiary gap that could have been cured with a consultative examination.

When an ALJ fails to make an express factual finding about the severity of an alleged mental impairment and fails to specify her reasons for denying a claimant's request for additional testing to complete the record, she fails to fulfill her duty to fully and fairly develop the record. See Ford v. Sec'y of Health and Human Servs., 659 F.2d 66, 69 (Former 5th Cir. Unit B 1981); see also Rease v. Barnhart, 422 F. Supp.2d 1334, 1372-73 (N.D. Ga. 2006) (remanding because record was "devoid of any evidence that the ALJ acknowledged or responded to the claimant's

requests" for second hearing on updated expert opinions or to subpoena additional medical records). Here, the ALJ, and ultimately the AC, failed to acknowledge the existence of a 12.04 issue, let alone make an express factual finding or specify the reasons for denying the request for a consultative examination. Thus, the decision is not supported by substantial evidence, and this case must be remanded for proper consideration. See Ford, 659 F.2d at 69; Reeves, 734 F.2d at 522 n.1.

The Commissioner makes several reasoned arguments why Plaintiff has an RFC for light work as determined by the ALJ. See generally Comm'r's Br. However, without the essential development and analysis of Plaintiff's mental impairments as alleged, no informed decision on Plaintiff's DIB application can be made. If there are reasons why the requested consultative examination is not necessary and/or reasons why the 12.04 claim raised by Plaintiff is not valid, then upon remand, the administrative decision must explain why. As the record stands now, however, the administrative record is lacking necessary information that makes it impossible for the Court to conclude that the administrative decision is supported by substantial evidence.[2]

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and

---

[2]In light of the recommendation for remand based on a failure to address whether Plaintiff satisfies Listing 12.04, the Court need not address Plaintiff's other allegations of error. Cf. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert testimony alone warrants reversal,' we do not consider the appellant's other claims.") As explained above, if a claimant meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. § 404.1520(d). Of course, should it be determined on remand that Plaintiff does not meet a Listing and the sequential process continues past step three, the determination of Plaintiff's RFC must be done in accordance with the applicable regulations and case law.

that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 28th day of October, 2015, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA